**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Martel Javell Einfeldt,<br><br>Defendant. | Case No. 14-cr-295 (SRN/JSM)<br><br>**MEMORANDUM OPINION AND ORDER** |

David P. Steinkamp, United States Attorney's Office, 300 South 4th Street, Suite 600, Minneapolis, Minnesota 55415, for Plaintiff.

Jeffrey C. DeGree, DeGree Law Office, 550 Lake Calhoun Center, 3033 Excelsior Blvd., Minneapolis, Minnesota 55416, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

## I. INTRODUCTION

This matter is before the Court on Defendant's Objections [Doc. No. 42] to Magistrate Judge Janie S. Mayeron's December 16, 2014 Report and Recommendation [Doc. No. 41], which recommended that Defendant's Motion to Suppress Statements [Doc. No. 20] and Defendant's Motion to Suppress Evidence Obtained in Search [Doc. Nos. 19, 26] be denied. For the following reasons, the Court overrules Defendant's Objections and adopts the Report and Recommendation in its entirety.

## II. BACKGROUND

Defendant was indicted on one count of being a felon in possession of a firearm. (Indictment at 1 [Doc. No. 1].) This charge resulted from a traffic stop conducted by Brooklyn Park Police Department Officer Sean Michael Drew and Officer Marah of a vehicle in which Defendant was a passenger. At an evidentiary hearing on December 3, 2014, the Magistrate Judge heard testimony from Officer Drew related to this event and viewed the squad video from Officer Drew's squad car. (See Report and Recommendation dated Dec. 16, 2014 [Doc. No. 41] ("R & R"), at 2, 3 n.2, 10 n.5.)

The Magistrate Judge's Report and Recommendation ("R & R") thoroughly sets forth the background of this case, and the Court incorporates the R & R by reference and recites facts only to the extent necessary to rule on Defendant's objections. Briefly stated, on June 25, 2014, Officers Drew and Marah were on patrol near Defendant's residence and had been informed that several armed robberies had recently occurred in that area. Officer Drew testified that he had previously received information from crime intelligence reports that Defendant was an active member of a gang, members of that gang regularly carried guns in their vehicles, Defendant was a felon with a prior conviction for robbery, Defendant lived in the area the Officers were patrolling, and Defendant's brother had been robbed at gunpoint the previous day. Officer Drew also testified that he could identify Defendant based on a photo that was included in the crime intelligence briefings, and that he was concerned that there would be retaliation for the robbery of Defendant's brother.

At around 9:50 p.m., Officers Drew and Marah saw a Saturn vehicle with a headlight out (a violation of Minnesota law). Officer Drew observed that Defendant was in the passenger seat. The Officers followed the Saturn and saw it make a left turn without signaling 100 feet prior to the turn (a violation of Minnesota law). The Officers activated their squad car's emergency lights and trained a spotlight on the Saturn. At that point, Officer Drew testified, he saw Defendant move down and forward in his seat. Officer Drew was concerned that Defendant might be concealing a gun.

As the Saturn pulled to a stop, Officer Marah approached the driver's side, and Officer Drew approached the passenger's side. While Officer Marah interacted with the driver, Officer Drew shined his flashlight through the passenger-side window. He testified that Defendant moved his left hand toward the floor each time the flashlight was aimed under the seat. Based on those movements, Officer Drew suspected that Defendant was attempting to conceal a weapon. Officer Drew went to the squad car and called for backup. When he returned to the Saturn and again shined the flashlight on the area under the passenger seat, he noticed that Defendant kept moving his feet around the area underneath the seat.

At 9:54 p.m., Officer Yang arrived. Officer Drew then opened the passenger door of the Saturn and removed Defendant to frisk him for weapons. During the frisk, Officer Yang shined his flashlight through the open passenger door and saw a handgun. The Officers arrested Defendant and the car's driver for illegal possession of a handgun. Defendant was then taken to the police station, and he gave a statement.

Defendant now moves to suppress the evidence obtained as a result of the search, as well as the statement taken at the police station. (Mot. to Suppress Statements [Doc. No. 20]; Mot. to Suppress Evid. Obtained in Search [Doc. Nos. 19, 26].) Both parties submitted briefing [Doc. Nos. 39, 40]. The Magistrate Judge issued her R & R on December 16, 2014. She first noted that Defendant did not challenge the legality of the stop and found that the traffic stop was not unreasonably long. (R & R at 9 & n.1.) She next determined that the Officers had a reasonable suspicion that Defendant possessed a weapon. (Id. at 9.) This reasonable suspicion was based on Officer Drew's prior knowledge of Defendant's gang involvement, the gang's use of guns, and the robbery of Defendant's brother; and Defendant's action during the traffic stop in slumping down and shielding the area under the passenger seat with his hands or feet. (Id. at 9–10.) Based on these facts, the Magistrate Judge determined that—in the totality of the circumstances—"a reasonable officer could believe that defendant was armed, and therefore, removal of defendant from the car for the purpose of conducting a pat down search of defendant was justified." (Id. at 10.) She then found that Officer's Yang's observation of the gun through the open car door was proper under the plain view doctrine and that, because the seizure of the gun was proper, there was no basis for suppressing Defendant's subsequent statements. (Id. at 10–11.)

## III. DISCUSSION

### A. Standard of Review

The district court reviews de novo those portions of the R&R to which an objection is made, and "may accept, reject, or modify, in whole or in part, the findings or

recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); accord D. Minn. LR 72.2(b).

### B. Defendant's Objections

Defendant's only objection to the R & R is that the Magistrate Judge improperly determined that the Officers had a "reasonable suspicion" that would justify removing Defendant from the vehicle and conducting a search. (See Objs. to R & R [Doc. No. 42] at 1–2.) According to Defendant, the Magistrate Judge "completely ignored the most crucial evidence presented, the squad video." (Id. at 2.) In particular, Defendant argues:

> The video in this matter clearly shows the Defendant, throughout his encounter with the officers. No "furtive movements" can be seen.
>
> The video also shows the playful and relaxed nature of the interaction between the Defendant and the officers. The officers laughed and joked with [Defendant] and the driver. They playfully referred to [Defendant] as "an old lady" and to his early curfew. At times, they walked away from the occupants while turning their back. At no time do the officers appear worried for their safety. To the contrary, they are casual and laughing. The video clearly reveals the officers were not, in fact, in fear for their safety.

(Id.) Therefore, Defendant concludes, Defendant's removal from the vehicle and the search of the vehicle were illegal. (Id.)

### C. Reasonable Suspicion

The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. Const. amend. IV. With some exceptions, police officers must obtain a warrant before conducting a search. United States v. Preston, 685 F.3d 685, 689 (8th Cir. 2012) (citation omitted). One such exception allows for a limited search for weapons if

the officer reasonably suspects that the suspect is armed and poses a danger. Id. (citing Terry v. Ohio, 392 U.S. 1, 29 (1968)). According to the Eighth Circuit:

> Officers may conduct a protective pat-down search for weapons during a valid stop . . . when they have [an] objectively reasonable suspicion that a person with whom they are dealing might be armed and presently dangerous and criminal activity might be afoot. In determining whether reasonable suspicion exists, we consider the totality of the circumstances in light of the officers' experience and specialized training. A pat-down is permissible if a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. In examining the relevant facts and inferences, we must keep in mind that minimally intrusive weapons searches at traffic stops will more likely be reasonable because of the inherent danger of traffic stops.

Id. (internal citations, quotation marks, and brackets omitted).

In this case, prior to the removal of Defendant from the vehicle and the pat-down search, Officer Drew knew that Defendant was an active member of a gang, that those gang members regularly carried guns in their vehicles, and that Defendant's brother had been robbed at gunpoint the previous day. Officer Drew was concerned that there would be retaliation for that robbery. Moreover, during the traffic stop—which is inherently dangerous—Officer Drew saw Defendant move down and forward in his seat and move his hand and feet near the area under the passenger seat when the flashlight was aimed under the seat. Under the totality of these circumstances, Officer Drew had a reasonable suspicion that Defendant was attempting to conceal a weapon and posed a danger sufficient to justify removing Defendant from the vehicle to conduct a pat-down search.

Defendant's objection to the contrary lacks merit. First, even if Defendant had not made any furtive movements while the vehicle was being pulled over, Defendant's movements while Officer Drew was standing by the passenger door (i.e., repeatedly

moving his hand and feet near the area under the passenger seat) created a reasonable suspicion that he was trying to conceal a weapon. Second, the nature of an officer's interactions with a suspect does not necessarily correlate with the officer's belief as to the danger presented by the suspect. For example, an officer may try to appear "casual" to prevent a dangerous situation from escalating. Therefore, the nature of the Officers' communications with Defendant and the driver of the vehicle do not demonstrate that the Officers were not concerned for their safety. And, in fact, Officer Drew's call for backup demonstrates that he was concerned. Accordingly, Defendant's objections are overruled, and his motions to suppress are denied.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendant's Objections to the Report and Recommendation [Doc. No. 42] are **OVERRULED**;

2. The Magistrate Judge's Report and Recommendation [Doc. No. 41] is **ADOPTED**;

3. Defendant's Motion to Suppress Statements [Doc. No. 20] is **DENIED**; and

4. Defendant's Motion to Suppress Evidence Obtained in Search [Doc. Nos. 19, 26] is **DENIED**.

Dated: January 12, 2015

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge